UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


COMMERCIAL STEAM CLEANING, L.L.C.
ANDREW E. HAROLD,

        Plaintiffs


v.                                        Civil Action No. 2:09-1009


FORD MOTOR COMPANY and
NAVISTAR INC.,

        Defendants


<u>MEMORANDUM OPINION AND ORDER</u>

        Pending is the motion by defendant Ford Motor Company ("Ford") for judgment on the pleadings, filed November 20, 2009, and plaintiffs' motion for leave to file a Third Amended Complaint, filed January 20, 2010, and the parties' consent motion to substitute Navistar, Inc. ("Navistar"), in place of Navistar International Corporation.

        The court ORDERS that the consent motion be, and it hereby is, granted.  The Clerk is directed to amend the style to substitute Navistar for Navistar International Corporation, as reflected above.  The Clerk is further directed to amend the style accordingly.

I.


Plaintiffs Commercial Steam Cleaning, L.L.C. ("CSC"),
and Andrew E. Harold are West Virginia citizens.  Ford appears to
have dual citizenship in Delaware and Michigan.  The docket does
not reflect the citizenship of Navistar.  That entity, however,
has stated in its answer that both personal jurisdiction and
venue are proper.

In Fall 2002, Ford manufactured, sold, and distributed
certain F-Series trucks which included the optional 6.0-liter
Power Stroke diesel engine ("the engine") designed and
manufactured by Navistar.  The engine first appeared in the 2003
model year, and followed along in the 2004, 2005, and possibly
2006, model years.  Plaintiffs assert that there have been
numerous problems associated with the engine, including, but not
limited to, fuel system and injector issues, oil leaks, broken
turbochargers, wiring harness troubles, faulty sensors, defective
exhaust gas recirculation valves and faulty computers.

In December 2005, CSC purchased two 2005 Ford F-550
trucks equipped with the engine.  In June 2006, CSC purchased the
2006 model of the same vehicle, equipped with the same engine.
On October 2, 2007, Mr. Harold purchased a 2004 Ford F250 Super

2

Duty pick-up truck equipped with the engine. As a result of the aforementioned manufacturing defects, plaintiffs have experienced numerous events requiring continuing repairs. For example, CSC was without use of its three trucks for approximately 325 days between December 9, 2005, and May 31, 2008, resulting in assorted forms of economic harm.

As a part of the initial sale, Ford issued to all purchasers a transferable written manufacturer's warranty that promised to repair, replace, or adjust all parts on vehicles that are defective in factory-supplied materials or workmanship. The warranty specifies that repairs will be free of charge. During model years 2003 through 2006, Ford sold to West Virginia residents 5,835 F-Series trucks equipped with the engine. Ford issued recalls to fix various problems with the engines, without success. Navistar has apparently refused to replace the engine.

Notwithstanding the manufacturer's warranty, plaintiffs believe the numerous problems they have experienced are not susceptible to a simple repair or replacement fix. Ford and Navistar have further refused to repair certain defects and problems. In view of the nature of the defects, plaintiffs "are informed and believe that they and other Class Members have and will incur substantial costs and expenditures in the future for

3

repairs to said vehicles and suffer substantial damages based upon a significant loss in fair market value for their vehicles based upon the widespread public knowledge of the problems associated with the" engine.  (Sec. Am. Compl. at 5)  Plaintiffs also are informed and believe that because of the defective and unreliable nature of the engine, there is a greater likelihood their engines will fail, lose power and/or cut-off during operation, thereby resulting in accidents involving personal injury, death, and property damage.

On August 5, 2009, plaintiffs instituted this action in the Circuit Court of Kanawha County against Ford and Navistar. They allege four claims for relief, namely, (1) breach of express warranty (Count One), (2) breach of express warranty involving a third-party beneficiary (Count Two), (3) breach of implied warranty (Count Three), and (4) negligence, gross negligence and recklessness (Count Four).  They seek, <u>inter</u> <u>alia</u>, preliminary and permanent injunctive relief ordering Ford and/or Navistar to repurchase all vehicles equipped with the engine, a declaration that the engine is defective and inherently dangerous, compensatory damages, punitive damages, and attorney fees and costs.

4

In the Second Amended Complaint, plaintiffs' claims are pled on behalf of themselves and all other similarly situated West Virginia consumers ("Class Members") who purchased Ford trucks equipped with the engine during the relevant times or that were manufactured by Navistar during that same period.

From the standpoint of typicality, the representative plaintiffs and the putative Class Members own vehicles equipped with a defective engine resulting in damage insofar as they:

> have incurred, or will incur, the cost of repairing and/or replacing their defective engines and associated components, including damages sustained from the loss of use of said vehicles containing such engines and significant diminution in fair market value.

(Sec. Am. Compl. at 7).  From the standpoint of commonality, plaintiffs allege, <u>inter alia</u>, that the engine is, in a uniform way, defective and subject to premature failure during normal use.  Absent the class device, plaintiffs allege that Class Members "will continue to incur damages, be at risk of irreparable harm, and continue to incur damages and Ford's and/or Navistar's misconduct will proceed without remedy."  (<u>Id.</u> at 11).

On September 16, 2009, defendants removed pursuant to the Class Action Fairness Act ("CAFA") and general diversity jurisdiction.  Ford moves for judgment on the pleadings as to all Counts.

II.


A.    Governing Standard


          Federal Rule of Civil Procedure 12(c) provides that
"[a]fter the pleadings are closed -- but early enough not to
delay trial -- a party may move for judgment on the pleadings."
Fed. R. Civ. P. 12(c).  A Rule 12(c) motion "is assessed under
the same standard that applies to a Rule 12(b)(6) motion."
Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009); Independence
News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir.
2009) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243
(4th Cir. 1999)).

          Rule 8(a)(2) requires that a pleader provide "a short
and plain statement of the claim showing . . . entitle[ment] to
relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct.
2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a
defendant to challenge a complaint when it "fail[s] to state a
claim upon which relief can be granted . . . ."  Fed. R. Civ. P.
12(b)(6).

          The required "short and plain statement" must provide
"'fair notice of what the . . . claim is and the grounds upon
which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct.

6

1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), <u>overruled on other grounds</u>, <u>Twombly</u>, 127 S. Ct. at 1969)); <u>see also Anderson v. Sara Lee Corp.,</u> 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." <u>Twombly</u>, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u>; <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level."  <u>Twombly</u>, 127 S. Ct. at 1965; <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)(noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 1974; <u>Giarratano</u>, 521 F.3d at 302.  The recent decision in <u>Iqbal</u> provides some

guidance concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable
> for the misconduct alleged. The plausibility standard
> is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint pleads facts that
> are "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.' "
>
> . . . .
>
>     In keeping with these principles a court
> considering a motion to dismiss can choose to begin by
> identifying pleadings that, because they are no more
> than conclusions, are not entitled to the assumption of
> truth.  While legal conclusions can provide the
> framework of a complaint, they must be supported by
> factual allegations.  When there are well-pleaded
> factual allegations, a court should assume their
> veracity and then determine whether they plausibly give
> rise to an entitlement to relief.

Iqbal,  129 S. Ct. at 1949-50 (citations omitted).

    As noted in Iqbal, the Supreme Court has consistently

interpreted the Rule 12(b)(6) standard to require a district

court to "'accept as true all of the factual allegations

contained in the complaint . . . .'"  Erickson, 127 S. Ct. at

2200 (quoting Twombly, 127 S. Ct. at 1965); see also South

Carolina Dept. of Health and Environmental Control v. Commerce

and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting

Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is

additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

B.   Motion for Judgment on the Pleadings

1. Count One -- Express Warranty

Ford seeks dismissal of the express warranty claim on the ground that plaintiffs have not alleged a tangible injury.

Plaintiffs allege under Count One that Ford expressly warranted "that its vehicles equipped with the . . . engine would be free of defects at the time of delivery."  (Sec. Am. Compl. at 12).  The source of that unusually broad representation is unclear inasmuch as it appears at odds with the repair and/or replacement warranty that actually appears in the warranty documents that Ford asserts are applicable here.  That more limited repair and/or replacement warranty is set out in the Second Amended Complaint at a point preceding the allegations that encompass Count One:

Ford issued to the plaintiffs . . . a transferable written manufacturer's warranty, which warranted that Ford would repair, replace or adjust all parts on vehicles that are defective . . . .  This warranty

9

requires that repairs will be free of charge . . . .

> Notwithstanding the manufacturer's warranty given
> by Ford to the plaintiffs and other purchasers of its
> vehicles, plaintiffs believe the numerous problems
> which the plaintiffs and the class have had with their
> vehicles are of an inherent and permanent nature that
> those problems cannot be satisfactorily corrected by
> repairs or replacement of parts to the engine, fuel
> system and related components.

(Sec. Am. Compl. at 4-5).

> Plaintiffs further assert under the heading of Count

One as follows:

> Ford breached the express warranties . . . by offering
> for sale and selling as safe, Ford vehicles equipped
> with the . . . engines that are by design, defective
> and have premature failure and other mechanical
> complications.  These actions caused damages to the
> plaintiffs and Class Members in the form, of among
> other things, loss of use, additional expenses for
> repairs and diminution in fair market value.

> As a direct and proximate result of Ford's breach
> of express warranty, plaintiffs and the Class have
> suffered actual damages[.]

> As alleged above, Ford and/or Navistar
> intentionally concealed the defective nature of the . .
> . engine from plaintiffs and the Class Members.
> Furthermore, the defective nature of the . . . engine
> could not be discovered by the plaintiffs and Class
> Members despite their exercise of due diligence and
> reasonable care.

(Sec. Am. Compl. at 12).[1]

---

[1]Ford also asserts that plaintiffs have not alleged facts
supporting a tangible injury.  Those injuries, however, are
sufficiently set forth in the block quote preceding this
footnote.

Like the repair and/or replacement warranty, plaintiffs elsewhere in the Second Amended Complaint allege as follows:

As a result of the defective conditions in the . . . engines and . . . vehicles into which they were placed, plaintiffs have been required to have their trucks repaired on numerous occasions but said problems have continued to exist.

. . . .

Ford has had two recalls to fix various problems associated with the . . . engine, but said recalls have been unsuccessful.

. . . .

Plaintiffs also are informed and believe that Ford and Navistar have refused to repair certain defects and problems, resulting in the owners having to personally incur these costs.

. . . .

[P]laintiffs are informed and believe that they and other Class Members have and will incur substantial costs and expenditures in the future for repairs to said vehicles and suffer substantial damages based upon a significant loss in fair market value for their vehicles based upon the widespread public knowledge of the problems associated with the 6.0-liter Power Stroke diesel engine.

(Sec. Am. Compl. at 3, 4, 5).

One of the leading commentators on the Uniform Commercial Code has observed as follows:

A plaintiff must allege each element of a breach of express warranty, including the existence of an express warranty, breach of the express warranty, and damages

11

proximately caused by the breach.  The purchaser adequately pleaded a claim for a breach of an express warranty where the buyer alleged that it incurred expenses not covered by the manufacturer pursuant to the express warranty that resulted from the defective materials and design of . . . [an] engine and, in addition, despite the manufacturer's efforts to repair or replace the defective materials, the repairs or replacements made by the manufacturer still were defective.

See 3 Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 2-313:216 (3rd ed. 2009)[2]; see also James J. White and Robert S. Summers, Uniform Commercial Code, § 9-5 ("The Code omits any explicit mention of reliance and requires only that the promise or affirmation become 'part of the basis of the bargain.'"); Horan v. Turnpike Ford, Inc., 189 W. Va. 621, 627, 433 S.E.2d 559, 565 (1993) ("If the jury found that the appellant created an express warranty, and the appellees suffered damages as a result of a breach of such warranty, then the jury could have found in favor of the appellees."); W. Va. Code § 46-2-313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.").

---

[2]The case referenced, and relied upon, by the commentator is Cox House Moving, Inc. v. Ford Motor Co., No. 7:06-1218-HMH, 2006 WL 2303182 (D.S.C. 2006).  The case involves the same engine that is the subject of this action.

The allegations of the Second Amended Complaint, taken in their entirety, satisfy <u>Twombly</u> in fleshing out the necessary elements for an express warranty claim.  Regarding the existence of an express warranty, plaintiffs allege that Ford promised to repair, replace or adjust all defective vehicle parts free of charge.  Regarding the breach, plaintiffs allege that the problems they have experienced are not susceptible to repair or replacement and that Ford and Navistar have refused to repair certain defects and problems.  Regarding the question of damages, plaintiffs plead, <u>inter alia</u>, that similarly situated class members have been required to personally incur repair costs.

While further factual detail might have simplified the inquiry and provided Ford better notice of the nature of the claim, the allegations, again, minimally suffice for purposes of pleading an express warranty cause of action.

Ford asserts two other arguments that effectively seek a partial dismissal of the damages sought.  First, Ford contends that plaintiffs may not pursue diminution-in-value damages inasmuch as they are inadequately pled.  Second, Ford asserts that plaintiffs cannot recover consequential damages inasmuch as the applicable warranty explicitly disclaims liability for consequential damages.

13

Both contentions are better left for the summary judgment stage of the case following discovery.  Regarding diminution-in-value, precise interrogatories will doubtless illuminate the basis for the damages sought and simplify, or at least better frame, resolution of the associated legal issues. The second contention is frequently imbued with some complexity, especially where a plaintiff, as here, asserts that a warranty has failed of its essential purpose, namely, repair or replacement that is, allegedly, ineffective.  See, e.g., 2 Roy Ryden Anderson, Damages Under the Uniform Commercial Code § 12:19 (2009); 2 Linda J. Rusch & Frederick H. Miller, Contractual Modification or Limitation of Remedy § 2:719:3 (2009); Reece v. Yeager Ford Sales, Inc., 155 W. Va. 453, 458, 184 S.E.2d 722, 725 (1971) (implying the fact-intensive nature of the inquiry).  As with the first contention, a complete evidentiary record will inform the appropriate resolution of the legal issues presented.

### 2. Count Three -- Implied Warranty

The same ruling is reached with respect to the implied warranty claim found in Count Three.  In moving to dismiss Count Three, Ford reasserts its arguments concerning the lack of a

14

tangible injury and the unavailability of diminution-in-value damages.  Having rejected or deferred those same arguments respecting the express warranty claim, the court need not address them further at this time.

Additionally, Ford suggests that "it is likely that a number of the [engine's] problems fall outside the periods of the implied warranty as limited by" the New Vehicle Limited Warranty provided to plaintiffs by Ford.  (Def.'s Memo. in Supp. at 14). Inasmuch as the argument appears somewhat fact bound at this point in the litigation, and that plaintiffs contend that the Ford warranty fails of its essential purpose, the court defers resolution of the issue.

 3. Count Four -- Negligence, Gross Negligence, and Recklessness

Plaintiffs assert in Count Four that Ford was negligent, grossly negligent, and reckless in the following respects:

1.   Failing to properly manufacture, design, install, and test the engine;

2.   Failing to adequately warn of the defective nature of the engine and its propensity to prematurely fail;

3.   Failing to timely recall the engine, despite its defects;

15

4.    Failing to properly repair and/or replace the engine;

5.    Failing to maintain a suitable reporting and monitoring system to evaluate reported incidents, complaints, and other problems associated with the engine;

6.    Failing to adequately report the engine's problems to the Consumer Products Safety Commission and other entities responsible for monitoring consumer product safety; and

7.    Continuing to sell vehicles equipped with the engine after learning of its defective nature.

Plaintiffs seek to recover economic damages, including recompense for loss of use of their vehicles, additional repair and replacement costs, and diminution-in-value.  They plead no physical injury to any person, nor any damage to the engine or its housing, as a result of the alleged defects and associated omissions by Ford and Navistar.

Ford seeks dismissal of Count Four based upon the so-called economic loss doctrine.  In particular, Ford asserts plaintiffs may not recover economic damages under a tort-based claim for a defective product unless "'a sudden calamitous event' causes 'actual physical injury to the product itself.'" (Def.'s Memo. at 6 (citing Star Furniture Co. v. Pulaski Furniture Co., 297 S.E.2d 854, 859 (1982) (emphasis in original)).

As noted, CSC and Mr. Harold do not allege that their vehicles or their components suffered a sudden calamitous event.

16

They assert, however, that they are unencumbered by the economic loss doctrine inasmuch as they fall within one of its exceptions, namely, that they enjoyed a "special relationship" with Ford. See Aikens v. Debow, 541 S.E. 2d 576 (2001). That putative relationship is alluded to generally in plaintiffs' response to Ford's motion for judgment on the pleadings but found nowhere within the Second Amended Complaint.

As Ford notes, West Virginia law generally forbids tort-based claims for defective products seeking purely economic damages. There are limited exceptions, however, to this economic loss doctrine. One exception applicable to both negligence and product liability-based claims is found in Star Furniture and its progeny. See also Basham v. Gen. Shale, 377 S.E.2d 830 (1988); Aikens, 541 S.E. 2d at 590-91; Eastern Steel Constructors, Inc. v. The City of Salem, 549 S.E.2d 266 (2001).

In Star Furniture, the Supreme Court of Appeals of West Virginia recognized an exception to the economic loss doctrine within one subdivision of the product-liability setting. Specifically, the court observed as follows: "In West Virginia, property damage to defective products which results from a sudden calamitous event is recoverable under a strict liability cause of action. Damages which result merely because of a 'bad bargain'

17

are outside of the scope of strict liability." <u>Star Furniture</u>,
297 S.E.2d at 859 (emphasis added); <u>Taylor v. Ford Motor Co.</u>, 185
W. Va. 518, 520-21, 408 S.E.2d 270, 272-73 (1991) ("Threaded
throughout our damage law is the conceptual difference between
tortious injuries and those arising from economic losses to
property occasioned by it being defective."); <u>Kaiser Aluminum and
Chemical Corp. v. Westinghouse Elec. Corp.</u>, 981 F.2d 136, 145
(4th Cir. 1992)("Accordingly, under West Virginia law, damage to
the product itself can be recovered in a strict liability suit
but only if the damage was the result of a 'sudden calamitous
event.'").

          According to <u>Basham</u>, "[i]t is clear . . . that while a
strict liability tort claim may arise when a defective product
causes injury, a party who suffers mere economic loss as a result
of a defective product must turn to the Uniform Commercial Code
to seek relief." <u>Id.</u> at 834.  Later, in <u>Aikens</u>, the supreme
court of appeals recognized another exception to the economic
loss doctrine in the negligence setting:

     After thoroughly considering the intricacies of a
     potential rule permitting the recovery of economic
     damages absent physical or personal injury, we conclude
     that an individual who sustains purely economic loss
     from an interruption in commerce caused by another's
     negligence may not recover damages in the absence of
     physical harm to that individual's person or property,
     a contractual relationship with the alleged tortfeasor,

18

> or some other special relationship with the alleged
> tortfeasor and the individual who sustains purely
> economic damages sufficient to compel the conclusion
> that the tortfeasor had a duty to the particular
> plaintiff and that the injury complained of was clearly
> foreseeable to the tortfeasor.

Id. at 589.


Thus, West Virginia law recognizes more than one exception to the economic loss doctrine; however, West Virginia law seems to separate negligence and products liability claims that involve the economic loss rule.  According to Aikens,

> [t]he prohibition against economic recovery in tort in
> the absence of physical impact is apparent in the
> context of product liability actions, in which the
> economic losses are essentially contractual and
> allocable by the parties, as reflected in purchase
> price warranties, or insurance.  See Bocre Leasing
> Corp. v. General Motors Corp., 84 N.Y.2d 685, 588, 621
> N.Y.S.2d 497, 645 N.E.2d 1195 (1995).  Courts have
> recognized the difficulty of transposing the rationale
> underlying the economic loss within the product
> liability framework to ordinary negligence cases where
> the contractual, commercial elements are absent.  We
> therefore reference the product liability economic loss
> rule as a similar legal paradigm, often solved with
> reasoning analogous to that employed within this realm,
> but we refrain from placing emphasis upon those cases
> or relying upon their rationales in resolving the case
> sub judice due to the obviously distinguishable factual
> and relational scenarios which provoke such litigation.

Id. at 584 n.4 (emphasis added).


Plaintiffs have not alleged that defects in the engine caused a physical injury to persons or property.  Neither does it

19

appear that the special relationship exception to the economic loss rule reaches situations such as this that allege economic loss resulting from a defective product.  Also absent is any allegation of a sudden calamitous event under <u>Star Furniture</u>. Count Four thus appears to sound in Uniform Commercial Code warranty or contract law rather than tort.  The economic loss rule thus applies, and Count Four fails to state a claim.

Inasmuch as Count Four fails to state a claim, it is ORDERED that Count Four be, and it hereby is, dismissed.[3]

D.   Motion for Leave to File a Third Amended Complaint

During the time that the court had under consideration the parties' briefing of the motion for judgment on the pleadings, plaintiffs moved to file a Third Amended Complaint. The proposed Third Amended Complaint adds: (1) two representative plaintiffs, Carlos Hess and Kathy Collins, (2) two counts against Ford under the West Virginia Consumer Protection Act, (3) one count against Navistar for implied breach of warranty owed to a third party beneficiary, (4) remedies sought under these new

---

[3]In view of this disposition, the court need not address Ford's additional contention that some of the misconduct alleged in Count Four is barred by the applicable limitations period.

20

counts, and (5) a count against Ford for breach of contract under West Virginia product liability law.

Defendants responded that they do not object to the filing of the Third Amended Complaint, without waiving any defenses, including those under Rule 12(b), that they might be able to assert once the proposed amended pleading is filed.

The proposed Third Amended Complaint, however, contains the substance of Count Four above that the court has dismissed. Additionally, the proposed pleading does not otherwise allege a sudden calamitous event accompanied by the harm about which plaintiffs complain. Further, on April 5, 2010, plaintiffs noticed their intention to not seek class certification. This decision would obviate the need to retain the class allegations found in the Second Amended Complaint.[4]

The court, accordingly, ORDERS that the motion for leave to file a Third Amended Complaint be, and it hereby is, denied without prejudice. Plaintiffs are given leave to submit a revised motion to amend no later than May 10, 2010, accompanied

---

[4]Inasmuch as plaintiffs have not moved for class certification, and are not moving to voluntarily dismiss this case, the court deems no further action required under Shelton v. Pargo, Inc., 582 F.2d 1298 (4th Cir. 1978), respecting the abandonment of pursuing any class treatment.

21

by a proposed pleading in accordance with this memorandum opinion and order.

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

DATED: April 27, 2010

John T. Copenhaver, Jr.
United States District Judge

22